IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,       :

        Plaintiff,

        v.                      :       Case No. 3:16-cr-44

JAMES L. WRIGHT,                        JUDGE WALTER H. RICE
        Defendant.              :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT JAMES L. WRIGHT'S MOTION TO DISMISS
COUNT ONE OF THE INDICTMENT (DOC. #52); COUNT ONE OF THE
SUPERSEDING INDICTMENT SHALL PROCEED TO TRIAL ONLY AS
TO SUBPARAGRAPHS 16l AND 16m; COUNTS TWO THROUGH EIGHT
SHALL PROCEED TO TRIAL IN THEIR ENTIRETIES

---

Defendant James L. Wright ("Defendant" or "Wright") was indicted by a Grand

Jury for the Southern District of Ohio on March 22, 2016, on one count of engaging in a

corrupt endeavor to obstruct and impede the Internal Revenue Service ("IRS"), two

counts of aiding and assisting in the filing of false tax returns, and five counts of filing

false tax returns.  Doc. #3.  Count One of the original Indictment, and later, the

Superseding Indictment, charged Wright with engaging in a Corrupt Endeavor to

Obstruct and Impede the Due Administration of Internal Revenue Law, in violation of 26

U.S.C. § 7212(a).  Doc. #3, ¶¶ 12-13, PAGEID #13-15; Doc. #39, ¶¶ 15-16, PAGEID

#295-98.  Wright has filed a Motion to Dismiss Count One of the Indictment ("Motion"),

Doc. #52, arguing that neither the original Indictment nor the Superseding Indictment

adequately states a claim as to that count.  Doc. #52-1, PAGEID #424 (citing 26 U.S.C.

§§ 6531(6), 7212(a); *U.S. v. Kassouf*, 144 F.3d 952, 959-60 (6th Cir. 1998)). For the reasons set forth below, Wright's Motion is SUSTAINED IN PART AND OVERRULED IN PART.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about August 6, 1997, Wright was indicted by a Grand Jury in the Southern District of Ohio on three counts of attempted tax evasion. No. 1:97-cr-64-HJW, Doc. #1. Plaintiff The United States of America ("the Government") alleges that the Internal Revenue Service-Criminal Investigations ("IRS-CI") began its investigation of Wright that ultimately led to that indictment in 1994. Doc. #39, ¶ 3, PAGEID 11. On or about September 17, 1998, Wright pled guilty to count one of the indictment, No. 1:97-cr-64, Doc. #71, and on or about July 30, 1999, he was sentenced by Judge Herman J. Weber to a probationary term of five years and ordered to pay "restitution in the amount of taxes determined by the [IRS] to be owing." *Id.*, Doc. #87, PAGEID #15. On July 23, 2004, United States Probation Officer Karen Brown-Fallings and Senior United States Probation Officer Daniel Kilgore stated that "Wright signed an agreement to begin repaying restitution on February 16, 2000. At the time, he agreed to pay restitution at the rate of $100 per month[.]" *Id.*, Doc. #88, PAGEID #17. However, the amount of restitution was never reduced to judgment, and Wright "only paid $4,300 toward the aforementioned obligation." *Id.* Moreover, while Officers Brown-Fallings and Kilgore were told by the Clerk's Office for this Court "that the final restitution figure was now $501,479.03[,]" they never "received verification of this amount from the IRS." *Id.* Nonetheless, they recommended "that James Wright's term of probation be allowed to

2

expire on July 30, 2004[.] . . . According to IRS officials[,] they will continue to collect funds from Mr. Wright despite the expiration of his probation term." *Id.*, PAGEID #18. Judge Weber concurred with their recommendation, and Wright's probationary period expired on July 30, 2004. *Id.* There is no record of Wright paying any additional restitution.

After Wright's conviction, he was subject to further interactions with the IRS. "On or about January 31, 2001[,] . . . the IRS assessed income taxes due and owing by Wright for the years 1990 through 1995. The IRS attempted to collect these taxes until about November 14, 2011[,] through liens and levies." Doc. #39, ¶ 12, PAGEID #295. The Government claims that, as part of this process, on December 15, 2006, Wright submitted a letter to an IRS appeals officer stating that he was not a partner in the Wright Family Limited Partnership ("WFLP"), when in fact he had been a partner since at least 1996. *Id.*, ¶ 16k, PAGEID #297; Doc. #55, PAGEID #594. Nonetheless, Wright "successfully ran out the clock" on those collection efforts, "and in November 2011[,] the IRS cleared his balances for the years 1990 through 1995 based on the expiration of the [ten] year statute of limitations for collection actions." *Id.*, PAGEID #595. Also, from February 2001 until April 2003, the IRS conducted an audit of the 1997 and 1998 income tax returns of The Remnant, Inc. ("The Remnant"), a corporation for which Wright was the sole shareholder. Doc. #39, ¶¶ 7, 13, PAGEID #294, 295. During that audit, Wright allegedly made a false statement to the IRS regarding the use of his home office for business purposes. *Id.*, ¶ 16l, PAGEID #298; Doc. #55, PAGEID #595.

Finally, beginning in June 2010, IRS revenue agent ("RA") Rebecca Bettelon began a civil audit of the 2007 income tax return of the B&P Company, Inc. ("B&P"), a

corporation for which "Wright controlled the financial and business operations[.]" Doc. #39, ¶ 5, PAGEID 294. During that audit, on November 17, 2010, Wright allegedly made a false statement to Bettelon "that he had [had] no prior dealings with the IRS, when in fact, the IRS had investigated Wright for tax evasion and audited The Remnant, Inc.'s tax returns[.]" *Id.*, ¶ 16m, PAGEID #298. The B&P audit was turned over to IRS-CI no later than June 24, 2011, Doc. #52-3, PAGEID #458, and on March 22, 2016, the Grand Jury for the Southern District of Ohio issued the original Indictment in this case. As to Count One, the Grand Jury alleged that Wright committed ten obstructive acts, including: "[f]alsely stating to an IRS revenue agent that he had no prior dealings with the IRS, when in fact, the IRS had investigated Wright for tax evasion and had audited The Remnant, Inc.;" and "[m]aking false statements to IRS revenue agents about the business use of his home." Doc. #3, ¶ 13i-j, PAGEID #14-15.

On March 8, 2017, Wright filed a Motion to Dismiss Count One of the Indictment, Doc. #31. Wright argued that the original Indictment did not allege that he had actual knowledge of the IRS proceeding that he was attempting to obstruct. Thus, he claimed, Count One, Violation of 26 U.S.C. § 7212(a), failed as a matter of law, as the Government failed to allege each element of the offense. Doc. #31-1, PAGEID #112. On or about April 11, 2017, the Grand Jury issued a Superseding Indictment, which included the statements from the original Indictment. Doc. #39, ¶ 16l-m, PAGEID #298. The Superseding Indictment included, for the first time, allegations regarding the IRS's attempted collection of Wright's unpaid taxes for the years 1990 through 1995. Doc. #39, ¶ 12, PAGEID #295. The Superseding Indictment alleged, also for the first time, that Wright was aware of five IRS proceedings, *id.*, ¶¶ 3, 12-14, PAGEID #293, 295, and

undertook thirteen overt acts in attempts to obstruct those proceedings. *Id.*, ¶ 16(a-m), PAGEID #296-98. Wright filed the instant Motion on May 15, 2017. Doc. #52.

## II. LEGAL STANDARDS

### A. Statute of Limitations

The statute of limitations for Count One, violation of 26 U.S.C. § 7212(a), expires six years from the date of the last obstructive act that is directed to a then-pending IRS proceeding. 26 U.S.C. § 6531(6). Obstructive acts that occurred outside the statute of limitations may be charged so long as the most recent act happened within the limitations period. Thus, for a claim of obstruction to be viable, at least one obstructive act must have occurred within the six years of the original indictment.

However, any superseding indictment may charge a violation of 26 U.S.C. § 7212(a), even if all the acts occurred more than six years prior to the superseding indictment, as long as the superseding indictment does not materially broaden or substantially amend the original indictment. A superseding indictment will be considered to "relate back," as long as "the original indictment fairly alerted the defendant to the subsequent charges against him and the time period at issue." *U.S. v. Salmonese*, 352 F.3d 608, 622 (2d Cir. 2003); *accord*: *U.S. v. Smith*, 197 F.3d 225, 228-29 (6th Cir. 1999). Thus, if the superseding indictment fails to meet this criteria, and no obstructive act occurred within six years of the superseding indictment, a charge of violation of 26 U.S.C. § 7212(a) is time-barred.

## B.    Elements of Crime and Nexus Requirement

Section 7212(a) states, in pertinent part, that:

> Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title shall ... [be guilty of an offense].

26 U.S.C. § 7212(a).  The U.S. Court of Appeals for the Sixth Circuit has held that the Government must prove that:  (1) there was a pending IRS proceeding against the defendant; (2) the defendant had actual knowledge that the proceeding was ongoing; (3) the defendant intentionally undertook an action to impede or obstruct the proceeding; (4) the defendant undertook the obstructive act with the intent to secure an unlawful benefit through the obstruction.  *U.S. v. Kassouf*, 144. F.3d 952, 953, 956-58 (6th Cir. 1998).

Additionally, in *U.S. v. Aguilar*, the Supreme Court held that, for a defendant to be charged under the "catch-all" provision of the federal obstruction of justice statute, the government must make a showing of "nexus," *i.e.*, "that the [obstructive] act must have a relationship in time, causation, or logic with the judicial proceedings." 515 U.S. 593, 599, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995) (emphasis added) (citing 18 U.S.C. § 1503).  The Court, in so holding, concluded that, given the breadth of the "catch-all" provision, nexus was necessary to satisfy due process.  In *Kassouf*, the Sixth Circuit held that such a requirement also applied to charges of attempting to obstruct an IRS proceeding in violation of 26 U.S.C. § 7212(a).  144 F.3d at 957.  The *Kassouf* Court affirmed the District Court's dismissal of the government's 26 U.S.C. § 7212(a) count

6

because the indictment "did not allege, as elements of the offense, that there was a pending proceeding or investigation by the IRS of which the defendant was aware." *Id.*[1]

## C.  Motion to Dismiss

The purpose of an indictment is to put the defendant on fair notice of the nature of the charges against him.  In addition to a "recitation of statutory language[, the charge] must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged." *U.S. v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (internal quotation marks and citation omitted); FED. R. CRIM. P. 7(c)(1).  A charge in an indictment is sufficient if it puts the defendant on sufficient notice and "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

---

[1] The Government notes that *Kassouf*'s logic has not been adopted in other Circuits, and argues that the case was wrongly decided.  Doc. #55, PAGEID #612-13 (citations omitted).  Nonetheless, *Kassouf* continues to be binding law in this Circuit, and has been upheld by Courts therein. *See U.S. v. Miner*, 774 F.3d 336, 345 (6th Cir. 2014) (citing *U.S. v. Bowman*, 173 F.3d 595, 600 (6th Cir. 1999); *Kassouf*, 144 F.3d at 953) ("We recognize that several of our sister circuits have concluded that *Bowman* functionally eviscerated *Kassouf*.  But where the rationales of *Kassouf* and *Bowman* conflict, we are bound to follow the former, not the latter."); *U.S. v. Ogbazion*, No. 3:15-cr-104-TSB-1, 2016 WL 6070365, at *17 (S.D. Ohio Oct. 17, 2016) (Black, J.) (quoting *Kassouf*, 144 F.3d at 957) (emphasis in original) ("Sixth Circuit has held that the omnibus clause 'requires some pending IRS action of which the defendant was aware.'"); *but see U.S. v. Gilbert*, No. 3:09-cr-57, 2009 WL 2382445, at *3 (W.D. Ky. Jul. 30, 2009) (citing *Bowman*, 173 F.3d at 600) (finding that a 26 U.S.C. § 7212(a) charge does not require that the defendant be aware that an IRS action is pending against him).

## III.    ANALYSIS

### A.    Superseding Indictment "Relates Back" to Original Indictment for Statute of Limitations Purposes

While the B&P audit took place from June 2010 until at least late March 2011, the allegedly obstructive act undertaken by Wright in connection therewith was his statement to Bettelon on November 17, 2010, that he had had no prior dealings with the IRS.  Doc. #3, ¶ 13l, PAGEID #14; Doc. #39, PAGEID #39, ¶ 16m, PAGEID #298. Wright's statement was made within six years of the original Indictment, which was filed on March 22, 2016, Doc. #3, but more than six years prior to the Superseding Indictment, which was filed on April 11, 2017.  Doc. #39.  As the statute of limitations pauses when an original indictment is filed, a superseding indictment "relates back to" and inherits the timeliness of that prior indictment, even if the charged act would be barred by the statute of limitations were the defendant to be charged with that act for the first time in a superseding indictment.  *U.S. v. Salmonese*, 352 F.3d 608, 622 (2d Cir. 2003).  However, the superseding indictment only relates back if the "later indictment does not materially broaden or substantially amend the original charge."  *Id.*; *U.S. v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999) (6th Cir. 1999) (internal quotation marks and citation omitted) (relation back doctrine applicable "if and only if [the superseding indictment] does not broaden the charges made in the first indictment.").  The Court's determination of whether the Superseding Indictment materially broadened the original Indictment must be the product of a fact-sensitive, totality of the circumstances analysis as to "whether the original indictment fairly alerted the defendant to the subsequent charges against him and the time period at issue."  *Id.*; *Smith*, 197 F.3d at 229.

Wright argues that the Superseding Indictment materially broadens and substantially amends the original Indictment, and thus, should not relate back for statute of limitation purposes. Doc. #52-1, PAGEID #429. In support, he notes that the Superseding Indictment adds three paragraphs devoted to specific IRS proceedings of which Wright was supposedly aware, including the IRS audit of B&P, for which there was no analogue in the original Indictment. *Id.* (citing Doc. #39, ¶¶ 12-14, PAGEID #295). Further, Wright notes that Count One of the Superseding Indictment adds three obstructive acts that he supposedly undertook in response to those proceedings: (1) making a false statement in preparing and filing a Form 1065 for WFLP; (2) making a false statement in preparing and filing a Form 1023 for the Forefathers Foundation; and (3) falsely asserting to an IRS appeals officer that he was not a partner in WFLP. *Id.*, PAGEID #429-30 (citing Doc. #39, ¶ 16d, i, k, PAGEID #296-97).

Wright claims that these allegations were included in an attempt to "cure the defects" in the original Indictment that were the subject of his original Motion to Dismiss—specifically, that the Government had failed to allege that there was any ongoing IRS proceeding of which Wright was aware at the time he undertook his obstructive acts. Doc. #52-1, PAGEID #430-31 (citing *U.S. v. Miner*, 774 F.3d 336, 345 (6th Cir. 2014); *U.S. v. Kassouf*, 144. F.3d 952, 958 (6th Cir. 1998)). He argues that the Government's reliance on new facts and new elements means that Wright was not reasonably on notice of the scope of Count One in the Superseding Indictment. *Id.*, PAGEID #432, 433 (citing *U.S. v. Watford*, 468 F.3d 891, 909 (6th Cir. 2006); *U.S. v. Ratcliff*, 245 F.3d 1246, 1253 (11th Cir. 2001); *Smith*, 197 F.3d at 229; *Miner*, 774 F.3d at 345; *Kassouf*, 144 F.3d 958). Accordingly, he claims, the Superseding Indictment

does not relate back to the original Indictment for statute of limitations purposes, and because the Superseding Indictment was issued more than six years after the B&P audit was transferred to IRS-CI, during which he allegedly undertook his most recent obstructive act, Count One is time-barred. *Id.*, PAGEID #434-35.

Pursuant to *Kassouf*, knowledge of a proceeding is a necessary element of a charge of violating 26 U.S.C. § 7212, and the original Indictment failed to allege such knowledge. However, none of the cases cited by Wright stand for the proposition that failure to allege a specific element of the offense in the initial indictment prevents a superseding indictment including that element from relating back for statute of limitations purposes. *See, e.g.*, *Smith*, 197 F.3d at 229 (citing *U.S. v. Freidman*, 649 F.2d 199, 203-04 (3d Cir. 1981) (discussing how "a facially invalid original indictment, which did not allege the proper $5000 minimum amount for prosecution under the applicable statute, was corrected by a superseding indictment properly alleging the $5000 minimum without being troubled by the statute of limitations."); *see also Russell v. United States*, 369 U.S. 749, 764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) ("whether the indictment contains the elements of the offense intended to be charged" is just one "of the criteria by which the sufficiency of an indictment is to be measured."). Indeed, such a rigid standard would be contrary to this Circuit's binding precedent. *Smith*, 197 F.3d at 229 (citing *U.S. v. Grady*, 544 F.2d 598, 601 (6th Cir. 1976) ("[n]otice to the defendants of the charges, so that they can adequately prepare their defense, is the touchstone in determining whether a superseding indictment has broadened the original indictment."); *see also* FED. R. CRIM. P. 7(C)(1) ("indictment or information must be a

plain, concise, and definite written statement of the essential facts constituting the offense charged[.]").

Further, this case is factually distinct from *U.S. v. Ogbazion*, in which the Court dismissed a charge of violation of 26 U.S.C. § 7212(a) because the indictment failed to allege that the defendant was aware of any IRS proceeding when he undertook the allegedly obstructive acts. No. 3:15-cr-104-TSB-1, 2016 WL 6070365, at *17 (S.D. Ohio Oct. 17, 2016) (Black, J.) (quoting *Kassouf*, 144 F.3d at 957)). The *Ogbazion* indictment did not allege any interaction between the defendant and an IRS agent, No. 3:15-cr-104-TSB-1, Doc. #6, ¶ 30, PAGEID #49-55, and the Court noted that it was undisputed that "there [was] no evidence that Defendant was aware of any pending IRS actions prior to November 2011." 2016 WL 6070365, at *17. In this case, Wright's allegedly false statement to Bettelon on November 17, 2010, was in both the original and Superseding Indictments. Doc. #3, ¶ 13i, PAGEID #14; Doc. #39, ¶ 16m, PAGEID #298. Moreover, both Indictments allege that Wright made that false statement "to an IRS revenue agent[,]" *id.*; Doc. #39, ¶ 16m, PAGEID #298. The allegations in the original Indictment were sufficient to put Wright on notice that: (a) there were IRS active proceedings; (b) Wright was aware of those proceedings; and (c) he allegedly made a false statement in an effort to obstruct one or more of those proceedings. In other words, "the essential facts constituting the offense charged[,]" FED. R. CRIM. P. 7(c)(1), were all present in the original Indictment. The Superseding Indictment made no new allegations that changed or broadened the circumstances surrounding that supposed obstructive act. The addition of the phrase "conducting an audit of B&P Company, Inc.'s corporate income tax returns[,]" Doc. #39, ¶ 16m, PAGEID #298, did nothing

11

more than clarify the proceeding that was implicitly referenced in the original Indictment. Doc. #3, ¶ 11, PAGEID #13 (alleged fraudulent filing of B&P's corporate tax returns).

Finally, Wright's argument that the addition of three alleged overt acts constitutes a material broadening of the Superseding Indictment, Doc. #52-1, PAGEID #429-30 (quoting Doc. #39, ¶ 16d, i, k, PAGEID #296-97), is unavailing. It is well settled that the addition of new overt acts to a superseding indictment does not bar that later indictment from relating back to the original indictment, as long as it does not alter the scope of the offense being charged and "the original indictment clearly put [the] defendants on notice of the charges against which they were to defend themselves at trial." *U.S. v. Lash*, 937 F.2d 1077, 1082 (6th Cir. 1991). For the reasons discussed above, the Superseding Indictment did not alter the scope of Count One, and the addition of the three overt acts did not deprive Wright of adequate notice of the charge against him.

As the Superseding Indictment did not materially broaden or substantially amend the essential portions of the charge of violating 26 U.S.C. § 7212(a), it relates back to the original Indictment. *Smith*, 197 F.3d at 228. As Wright's last alleged obstructive act occurred within six years of the original Indictment, and "the unit of prosecution remains the corrupt endeavor and not the pending proceeding," Doc. #55, PAGEID #621, even after *Kassouf*, Count One is not time-barred.


### B.    2001-11 Collection Efforts may not form Basis for Count One

As discussed above, as part of his 1999 sentence in his previous tax fraud case, Wright was ordered to pay restitution of an amount to be determined by the IRS. In the Corrected Judgment and Sentencing Order, the Court concluded "that the reasonable tax loss for the purposes of sentencing[] is more than $13,500 and less than $23,500[.]"

No. 1:97-cr-64, Doc. #87, PAGEID #12. The Court did not set a specific amount of restitution at the time of sentencing, but held that "restitution in the amount of taxes determined by the Internal Revenue Service to be owing . . . shall be due immediately." *Id.*, PAGEID #15. The Court ordered Wright to "cooperate with the IRS in the payment of any and all delinquent taxes and in the determination of his civil tax liability and payment thereof[.]" *Id.*, ¶ 4, PAGEID 13. Further, Wright was ordered to "make installment payments on any unpaid balance of the restitution owed at the direction of the Probation Officer." *Id.*, ¶ 7, PAGEID #14. Nonetheless, there is no record of an IRS determination of the amount of tax due and owing, despite being required to do so within ninety days of judgment being entered, 18 U.S.C. § 3664(d)(5), and the amount of restitution was never reduced to judgment.

The Government claims that in 2001, the IRS made an assessment against Wright for supposedly delinquent taxes for tax years 1990 through 1995, and attempted to collect those delinquent taxes from 2001 until 2011. Doc. #55, PAGEID #594. The Superseding Indictment alleges that Wright was aware of the IRS's efforts to collect taxes owed, and that the allegedly false statement made by Wright regarding his membership in WFLP was made within the alleged collection period. Doc. #39, ¶¶ 12, 16k, PAGIED #295, 297. While some of those years were the subject of Wright's 1997 indictment and 1999 conviction, No. 1:97-cr-64, Doc. #1; *id.*, Doc. #87, the Government has never produced a record of the taxes he owed for tax years 1990 through 1995. Wright argues that, because the amount of tax owed in connection with his 1999 conviction was never reduced to judgment, any collection efforts could not constitute an IRS proceeding, since he never actually owed any tax. Doc. #56, PAGEID #638. In

support, he argues that the statements in the judgment regarding his restitution obligation were insufficient to create any liability, because there was never an amount of delinquency reduced to judgment. *Id.*, PAGEID #639. Wright claims that Sixth Circuit precedent dictates that if "there was no timely judicial determination of the restitution amount, [then] the judgment contains no enforceable restitution provision." *Id.*, PAGEID #640 (quoting *U.S. v. Jolivette*, 257 F.3d 581, 584 (6th Cir. 2001); (citing *U.S. v. Weir*, 861 F.2d 542, 546 (9th Cir. 1988)). Thus, he argues, "the restitution aspect of the judgment is completely null and void[,]" *id.*, PAGEID #639 (citing 18 U.S.C. § 3664(a), (d)(5); *Jolivette*, 257 F.3d at 584), and there was no tax owed for those years.

Wright is correct that there was never a restitution amount reduced to judgment, and the Government has offered no evidence as to how the restitution amount of between $13,500 and $23,500 projected by the Court at sentencing translated into a liability of more than $500,000 by 2004. No. 1:97-cr-64, Doc. #88, PAGEID #18. Nonetheless, the Report on Offender Under Supervision by U.S. Probation Officer Brown-Fallings shows that Wright was aware of his obligation to make restitution as part of the judgment against him, and did, in fact remit some of the taxes determined to be owing. As Brown-Fallings noted, "Wright signed an agreement to begin repaying restitution on February 16, 2000. At that time, he agreed to pay restitution at the rate of $100 per month based on what he perceived as his tax indebtedness of $13,500 to $23,500[,]" *id.*, PAGEID #17, and Wright actually "paid $4,300 toward the aforementioned allegation." *Id.* Further, Brown-Fallings noted that "[t]hroughout his term of supervision[,] Mr. Wright has met with Internal Revenue Officials in order to resolve his tax problems[,]" and that Wright's former attorney, Patrick Hanley, advised

her on July 19, 2004, that "Wright intends to pay additional money by July 27, 2004[,] in order to satisfy the $13,500 amount which reflects the low end of the range designated by the Government at the time of sentencing." *Id.*, PAGEID #18. It is illogical for Wright to argue that he was unaware of any tax proceeding against him personally, ongoing between 2001 and 2011, when, in fact, he paid money to the Clerk of Courts as part of such proceeding. Thus, the Court rejects that argument.

However, the Government has failed to allege sufficient nexus between that proceeding and any act taken by Wright to obstruct that proceeding. The only act alleged in the Superseding Indictment that the Court may reasonably infer took place during that time period, <u>and</u> did not implicate other proceedings, was Wright's statement on or about December 15, 2006, that he was not a member of WFLP, when, in fact, he had been a partner since approximately 1996. Doc. #39, ¶ 16k, PAGEID #297; Doc. #55, PAGEID #594. Yet, there is no indication from the Superseding Indictment that the IRS proceedings between 2001 and 2011 were in any way connected to WFLP; indeed, his membership in WFLP did not begin until after the tax years that were allegedly the subject of collection efforts. In its memorandum in opposition, the Government argues that Wright's statement was made as part of his "attempt[] to negotiate a settlement of his tax liabilities by submitting an application for an offer in compromise (['])OIC[']).'" Doc. #55, PAGEID #594. Yet, there is no discussion of any OIC in the original and Superseding Indictments; nor does the Government's memorandum address the disconnect between WFLP and the tax years at issue. The Government has failed to put Wright on fair notice as to what, if anything, he allegedly did to violate 26 U.S.C. § 7212(a) as to the tax collection efforts between 2001 and 2011. FED. R. CRIM. P. 7.

Accordingly, those efforts may not be considered an IRS proceeding obstructed by Wright.

### C. Previous Criminal Proceeding and Probation may not Serve as Basis for Count One

As discussed above, the criminal proceeding against Wright ended with his sentencing on August 17, 1999, and his probationary period in connection with that conviction ended on July 30, 2004. Aside from a conclusory statement that Wright's obstructive behavior began in 1997, Doc. #39, ¶ 16, PAGEID #295, the Superseding Indictment does not put Wright on reasonable notice of what, if anything, he did to obstruct his sentencing or his probation being terminated. The failure to allege nexus between the proceedings and the obstructive acts mean that those proceedings may not form the basis for the charge of violating 26 U.S.C. § 7212(a).

### D. Superseding Indictment Sufficiently Alleges Nexus Between Two of Thirteen Alleged Obstructive Acts and IRS Audits of The Remnant and B&P

Wright argues that, even if Claim One were not barred by the statute of limitations, it still must be dismissed because the Government has failed to allege nexus in either the original or Superseding Indictment. More specifically, Wright claims, the Government has failed to allege connections in time, causation or logic between an IRS proceeding of which Wright was aware, and the obstructive act that he supposedly undertook in response to that proceeding. Doc. #52-1, PAGEID #437 (citing *U.S. v. Aguilar*, 515 U.S. 593, 599 (1995)). In support, Wright notes that the Superseding Indictment lists thirteen alleged obstructive acts between 1994 and 2011 and at least

16

three IRS proceedings of which Wright was supposedly aware. However, the Superseding Indictment does not list specific dates or timeframes for eleven of the thirteen allegedly obstructive acts, Doc. #39, ¶ 16a-k, PAGEID #296-97, and "fails to address how any of them [was] individually implicated by any of Wright's actions." Doc. #52-1, PAGEID #445. Absent such a temporal connection, Wright argues that he cannot glean from the Superseding Indictment "which proceeding was obstructed, much less how." *Id.*, PAGEID #450 (citing *U.S. v. Miner*, 774 F.3d 336, 346 (6th Cir. 2014)

Further, Wright claims that the remaining two allegedly false statements that include a temporal nexus—(a) his business use of a home office, during the IRS audit of The Remnant; and (b) his past non-involvement with the IRS, during its audit of B&P—fail to sufficiently allege connections between those audits and how his statements impeded them. Doc. #52-1, PAGEID #451-52. Wright argues that the absence of such connections mean that he is not sufficiently on notice of how he "intend[ed] to corrupt the justice system in a manner likely to impede the due administration of justice[,]" *id.*, PAGEID #439 (citing *Aguilar*, 515 U.S. at 599), and thus, he contends, Count One must be dismissed for failure to state a claim. *Id.*

The Government claims that Wright improperly conflates its burden at the indictment stage with its burden of proof at trial. In support, it notes that the Supreme Court has held "whether an indictment could contain more facts or be more specific is not the test for legal sufficiency." Doc. #55, PAGEID #617 (citing *U.S. v. Debrow*, 346 U.S. 374, 375-76, 74 S.Ct. 113, 98 L.Ed. 92 (1953)), and that "Wright has not cited a single case in which a court has dismissed an indictment that alleged the existence of [a] pending proceeding, but failed to make additional allegations regarding the nexus

17

between that proceeding and the obstructive acts." *Id.*, PAGEID #618. The

Government argues that the Superseding Indictment's allegations in the introduction

(awareness of the pending proceedings) and in Count One (obstructive acts undertaken

to block those proceedings) satisfied its burden of putting Wright reasonably on notice

of the gravamen of the charge. *Id.*, PAGEID #620. Thus, the Government argues, all

thirteen overt acts may serve as the basis for Count One.

### 1. Acts One through Eleven

As to Act One, the Government alleges that Wright formed and used The

Remnant, Wright Family Foundation I and the Fore Fathers Foundation "to divert money

from B&P Company, Inc., to his personal use and the use of his family members[.]"

Doc. #39, ¶ 16a PAGEID #296. Similarly, the Government, in Acts Eight and Ten,

contends that Wright titled assets in the names of WFLP and his mother to conceal his

personal interest in those assets, *id.*, ¶ 16h, PAGEID #297, and "[s]ubmitted documents

to educational institutions that concealed his control of Fore Fathers Foundation[,]" *id.*, ¶

16j, respectively. Indeed, Wright's alleged conduct may have been fraudulent and

criminal in its own right. However, the Superseding Indictment does not put Wright on

notice as to how those formations and uses were allegedly caused by or connected to

any IRS proceeding that was then-ongoing. *See Kassouf*, 144 F.3d at 957 ("[b]ecause

Title 26 encompasses such routine actions . . . , imposing liability for actions committed

before a person knew of an investigation or proceeding, would open them up to a host

of potential liability [for] conduct that is not specifically proscribed.").

Acts Two through Seven and Act Nine describe Wright's alleged preparation and

filing of fraudulent personal and business tax returns. Doc. #39, ¶ 16b-g, i, PAGEID

#296-97. The Government does not argue that the filing of a tax return, and IRS acceptance of same, constitute an IRS proceeding for the purposes of 26 U.S.C. § 7212(a). *See also Kassouf*, 144 F.3d at 957 n.2 (examples of IRS proceedings "may include, but [are] not limited to, subpoenas, audits or criminal tax investigations.").

Finally, as discussed above, Act Eleven, the allegedly false statement made to an IRS appeals officer regarding his interest in WFLP, Doc. #39, ¶ 16k, PAGEID #297, lacks any connection in time, causation or logic to a pending IRS proceeding. Thus, Acts One through Eleven, Doc. #39, ¶ 16a-k, PAGEID #296-97, may not form the basis for Count One.[2]


### 2.    Acts Twelve and Thirteen

However, the Government has met its burden—sufficient allegations of connections in causation, time or logic between the IRS proceedings and the alleged obstructive acts, *Kassouf*, 144 F.3d at 956-57—as to Acts Twelve and Thirteen, Wright's allegedly false statements made during the IRS's audits of The Remnant and B&P. The Superseding Indictment—which, as discussed above, relates back to the original Indictment for statute of limitations purposes—described the timeframe of those audits and the false statements he made in connection therewith; further, the Court may plausibly infer that Wright made the statements with the intent to impede the audits. Doc. #39, ¶¶ 13-14, 16l-m, PAGEID #295, 297-98.

---

[2] In so ruling, the Court does not hold that evidence of Acts One through Eleven are necessarily inadmissible at trial. Rather, evidence of one or more of those acts <u>may</u> be admissible, for example, as evidence of lack of mistake or common scheme or plan. FED. R. EVID. 404(b). The admissibility of such evidence depends, of course, on the context in which it is offered, the adequacy of the foundation laid, and the Court's determinations regarding relevance, prejudice and other considerations. FED. R. EVID. 401, 403, 404.

The issue of whether Wright actually used his home office for business purposes may be, as Wright argues, a fact-sensitive determination, Doc. #52-1, PAGEID #451-52; however, the Government need not allege facts that would prove the falsity of Wright's statement beyond a reasonable doubt. Further, and contrary to Wright's argument, Doc. #52-1, PAGEID #452, the fact that Bettelon knew of Wright's conviction when she asked him about any previous dealings with the IRS is immaterial as to whether he attempted to obstruct the B&P audit by making that statement. Indeed, the statute states that "[w]hoever . . . <u>endeavors to obstruct or impede</u>, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both[.]" 26 U.S.C. § 7212(a) (emphasis added). Accordingly, Wright's two statements for which the Government sufficiently alleged temporal connections also meet any nexus requirement for causation and logic. *Cf. U.S. v. Kassouf*, 144 F.3d 952, 958 (6th Cir. 1998) (dismissing a 26 U.S.C. § 7212 charge based on act that was legal at the time it was undertaken <u>and</u> there was no audit ongoing at the time).

Finally, Wright argues that the statute of limitations must be applied as to each of the alleged proceedings. Doc. #56, PAGEID #636-37 (citing 18 U.S.C. §§ 371, 1503; 26 U.S.C. §7212; *Kassouf*, 144 F.3d at 958). Yet, the portion of the *Kassouf* holding relied upon by Wright makes no reference to statute of limitations, and cannot reasonably be read to impose such a requirement upon the Government. To the contrary, while the Sixth Circuit has not spoken directly to the issue, Courts in other Circuits have held that acts outside of the limitations period may be charged so long as the defendant "committed at least one act of interference less than six years before the

indictment was returned[.]" *U.S. v. Murphy*, 824 F.3d 1197, 1206 (9th Cir. 2016) (citing *U.S. v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997)).  As the Superseding Indictment has sufficiently alleged that he was aware of the audits of The Remnant and B&P at the time he supposedly made the false statements, and one of the statements occurred during the statute of limitations period, both acts may form the basis for Count One. Accordingly, Wright's Motion must be overruled as to those alleged acts.

## IV.   CONCLUSION

For the foregoing reasons, Wright's Motion to Dismiss, Doc. #52, is SUSTAINED IN PART AND OVERRULED IN PART.  Count One of the Superseding Indictment shall proceed to trial as against Wright, but only as to the allegedly false statements described in sub-paragraphs 16l and 16m.

Date: October 12, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE